[Cite as *In re B.C.*, 2014-Ohio-2748.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: B.C.

C.A. Nos.    26976
                  26977

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 10-1-0001

DECISION AND JOURNAL ENTRY

Dated: June 25, 2014

MOORE, Presiding Judge.

{¶1}    Teresa D. ("Mother") and Mark C. ("Father") appeal from the judgment of the Summit County Juvenile Court.  We affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.

I.

{¶2}    On January 5, 2010, Summit County Children Services ("CSB") filed a complaint in the trial court alleging that the child B.C. was abused and dependent, and requesting the trial court to issue temporary legal custody of B.C. to CSB.  Thereafter, the trial court found B.C. to be a dependent child, and ordered that she remain in the emergency custody of CSB until further disposition.  Later, the trial court ordered that B.C. be placed in the temporary custody of CSB, and it adopted a case plan submitted by CSB.

{¶3}    Father and Mother each moved for legal custody of B.C., and CSB moved the court to grant legal custody of B.C. to her maternal aunt ("Aunt").  Thereafter, the trial court

granted a six-month extension of temporary custody to CSB. Later, on August 30, 2011, the magistrate issued a decision granting legal custody to Aunt, and indicating that a further hearing would be held to "address visitation, child support, and any other residual parental rights[.]" On the same date, the trial court adopted the magistrate's decision and independently entered judgment. On September 12, 2011, Mother filed objections to the magistrate's decision. On December 21, 2011, the trial court issued an order overruling Mother's objections.

{¶4} Thereafter, the magistrate issued a decision addressing child support and visitation, which was adopted by the trial court. Mother and Father each filed objections to the magistrate's decision in regard to the support determination, which the trial court found to have merit. The trial court remanded the issue of child support to the magistrate. On May 15, 2013, the magistrate issued a new decision setting child support. The trial court adopted the magistrate's decision the same day, and independently entered judgment. Neither parent filed objections to the magistrate's decision. Mother and Father each filed a notice of appeal on June 14, 2013. The parents now each present four assignments of error for our review. We have consolidated certain assignments of error to facilitate our discussion.

II.

{¶5} Initially, we note that CSB has argued that several of the parents' assignments of error are barred by res judicata because the parents were required to raise challenges to the legal custody determination in a timely appeal from the legal custody order, and, having failed to do so, are barred from now raising these arguments.

{¶6} We first address whether the legal custody order was a final order from which an appeal could have been taken. Pursuant to Article IV, Section 3(B)(2) of the Ohio Constitution, Ohio's courts of appeals "have such jurisdiction as may be provided by law to review and affirm,

modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district[.]" Under R.C. 2505.02(B)(2), a final order includes "an order that affects a substantial right made in a special proceeding[.]"

{¶7} "Juvenile court proceedings under R.C. Chapter 2151 are special statutory proceedings." *In re A.P.*, 196 Ohio App.3d 500, 2011-Ohio-5998, ¶ 7 (9th Dist.), citing *In re D.C.*, 9th Dist. Summit No. 21008, 2003-Ohio-97, ¶ 8, citing *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360 (1994), and *Polikoff v. Adam*, 67 Ohio St.3d 100, 104 (1993). Legal custody affects a substantial right. *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, ¶ 11 ("a parent does have a substantial right in the custody of his or her child"). Therefore, an order granting legal custody is final order from which an appeal may be taken. *See* R.C. 2505.02(B)(2).

{¶8} Accordingly, the parents could have filed an appeal of the legal custody determination from the August 30, 2011 order which adopted the magistrate's decision and independently entered judgment, and Mother also could have filed an appeal from the December 21, 2011 order overruling her objections. *See Miller v. Miller*, 9th Dist. Medina No. 10CA0034-M, 2011-Ohio-4299.

{¶9} Next, we must determine whether the parents *were required* to raise any challenges to the legal custody determination within thirty days of the entry of the legal custody order (or, for Mother, the order overruling Mother's objections to the legal custody order). "Generally, an appeal of a judgment or final order must be filed within 30 days from the entry of the judgment or order." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, ¶ 10, citing App.R. 4(A). Although a party generally must file an appeal within thirty days of a final order pursuant to App.R. 4(A), an exception to this rule appears in App.R. 4(B)(5), which provides:

*Partial final judgment or order.* If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ.R. 54(B), *a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order tha[t] disposes of the remaining claims.* Division (A) of this rule applies to a judgment or order entered under Civ.R. 54(B).

(Emphasis added.) The Ohio Supreme Court has addressed App.R. 4(B)(5) in the context of orders that find a child abused, neglected, or dependent, and in which temporary custody is granted to Children Services. *In re H.F.* at ¶ 12. The Court determined that "[f]or App.R. 4(B)(5) to apply, an order must meet two requirements: (1) it must be a final order that does not dispose of all claims for all parties and (2) it must not be entered under Civ.R. 54(B)." *Id.* at ¶ 12. The Court concluded that orders which find children abused, neglected, or dependent and which place the children in the custody of the agency were final orders pursuant to *In re Murray*, 52 Ohio St.3d 155 (1990), syllabus and R.C. 2505.02. *In re H.F.* at ¶ 9. However, the Court concluded that these orders were not "partial" final orders because there were no claims remaining between the parties "following the juvenile court's adjudication order of neglect, abuse, and dependency and grant of temporary custody of the two children" to the agency. *Id.* at ¶ 12.

{¶10} Here, CSB filed a motion for legal custody to be granted to Aunt. *See* R.C. 2151.415(A) (requiring children services agency to file a motion prior to expiration of its grant of temporary custody for further disposition of the child in one of several ways, including a request that legal custody of the child be granted to a relative).

{¶11} In its order granting legal custody of B.C. to Aunt, the trial court specifically indicated that an additional hearing would be held to "address visitation, child support, and any other residual parental rights[.]" Therefore, a discrete future action was scheduled on child

support and visitation, issues which were left unresolved at the time the court determined legal custody. In *In re H.F.,* the Court declined to apply App.R. 4(B)(5) where the possibility of future action arose from the temporary nature of the order and from the juvenile court retaining jurisdiction over the case because such potential future action did "not involve an active controversy or claim between the parents and the children services agency." *Id.* at ¶ 16. However, here, the trial court's order did not contemplate *potential* future action, instead it *specifically provided* that a hearing would be held to resolve of the active controversy/claim of visitation and support.

{¶12} Based upon the foregoing, under the particular facts of this case, we conclude that the legal custody order was a partial final order within the meaning of App.R. 4(B)(5). Accordingly, the parents could appeal the legal custody determination "within thirty days of entry of judgment or order appealed *or the judgment or order tha[t] disposes of the remaining claims*." (Emphasis added.) App.R. 4(B)(5). We stress that our holding is limited to the particular facts of this case where the trial court specifically provided for a discrete future hearing to resolve support and visitation.

{¶13} Thus, the parents were permitted to appeal the legal custody determination within thirty days of the May 15, 2013 order which disposed of the last active controversy, and their arguments are not barred.

## MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING [CSB'S] MOTION FOR LEGAL CUSTODY AND DENYING MOTHER'S MOTION FOR LEGAL CUSTODY.

## MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A 6 MONTH EXTENSION.

{¶14} In the Mother's first assignment of error, she argues that the trial court erred in placing legal custody of B.C. with Aunt. In her second assignment of error, Mother argues that the trial court abused its discretion in failing to order an additional six-month extension of temporary custody. We disagree.

{¶15} Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. We review the trial court's determination of custody for an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Moreover, "[t]he decision to grant or deny an extension of temporary custody is a discretionary one," and "will be reversed only upon a finding of an abuse of discretion." *In re S.N.*, 9th Dist. Summit No. 23571, 2007-Ohio-2196, ¶ 16, citing *In re P.B.*, 9th Dist. Summit No. 23276, 2006-Ohio-5419, ¶ 38. An abuse of discretion implies that a trial court was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶16} In regard to the trial court's decision to grant legal custody to Aunt, "[a]lthough there is no specific test or set of criteria set forth in the statutory scheme" for a trial court's disposition of legal custody to a relative, "courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. "[T]he factors listed in R.C. 2151.414 provide guidance in determining whether a grant of legal custody is in the best interest of the child[]." *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. R.C. 2151.414(D)(1) provides as follows:

In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶17} In her brief, Mother first argues that she had good visits with the child, which favored her motion for legal custody. *See* R.C. 2151.414(D)(1)(a). Next, she points out that B.C. was not old enough to express an opinion as to her wishes, although the guardian ad litem recommended legal custody be granted with Aunt. *See* R.C. 2151.414(D)(1)(b). She further notes that B.C. was removed from Mother's care at birth. *See* R.C. 2151.414(D)(1)(c). She then argues that there was no proof of a need for legally secure permanent placement at the time of the legal custody hearing. *See* R.C. 2151.414(D)(1)(d). Mother maintains that these factors do not demonstrate that it was in B.C.'s best interest to be placed in Aunt's legal custody.

{¶18} However, Mother acknowledges in her brief that CSB focused much of its case on Mother's substance abuse. As part of her case plan, Mother completed urine screens which

resulted in negative findings until a screen on March 7, 2011, when a specimen was found to be diluted. CSB then requested a hair follicle test, which Mother completed on July 5, 2011. The results of the hair follicle test demonstrated medium use, meaning daily or weekend use, of cocaine during both the last 90 days and during the past 90-180 days. CSB requested Mother to engage in outpatient treatment, but Mother refused to do so, and the CSB caseworker did not make a referral for a substance abuse assessment. At the time of trial, Mother both indicated that she was willing to engage in the assessment if CSB provided a referral, and she disputed the results of the hair follicle test.

{¶19} Mother now argues that, assuming she had engaged in illicit drug usage, there was no evidence that her purported drug usage had an adverse impact on B.C. Therefore, she argues that this is not a "ground for dependency" and cites *In re V.R.*, 9th Dist. Summit No. 23527, 2008-Ohio-1457, ¶ 20. However, *In re V.R.* is distinguishable on its facts. In that case, as Mother appears to recognize, this Court addressed the trial court's *adjudication of a child as dependent* where CSB failed to present clear and convincing evidence that the mother's purported alcohol and marijuana use while pregnant adversely affected her baby. *Id.* at ¶ 14-18. Unlike *In re V.R.*, we are not reviewing the trial court's adjudication of the child as dependent. Instead, we are reviewing the award of legal custody, in which the focus is the best interest of B.C., not the unsuitability of Mother. *In re D.R.*, 153 Ohio App.3d 156, 2003-Ohio-2852, ¶ 17 (9th Dist.).

{¶20} Further, here, the trial court did not exclusively rely on Mother's purported drug usage to determine that it was in B.C.'s best interest to be placed with Aunt. The court considered that B.C. has been placed in the home of the Aunt, with whom she has bonded, since she was born. In addition, CSB found the home to be appropriate. Aunt also had custody of

B.C.'s biological brother, and the children had bonded with each other. In addition, although the parents' visits with B.C. were appropriate, the visits consisted of only two hours of supervised visitation per week. CSB had made efforts to increase the amount of visitation, but the parents had provided various reasons for their inability to increase the visitation. Further, the parents cancelled their scheduled visitation five times between February and July of 2011 for various reasons. Also, although the guardian ad litem had testified that the parents had a bond with B.C., he testified that the best interest of B.C. was to be placed in Aunt's legal custody. In addition, the court concluded that Mother had not effectively dealt with her mental health issues. Mother had attended counseling, but the court concluded that she had failed to address the recommendations of the parenting evaluation, and then terminated her counseling, because she determined that it was no longer necessary.

{¶21} Based upon the foregoing, we cannot say that the trial court's decision to grant legal custody to Aunt was an abuse of discretion. Accordingly, Mother's first assignment of error is overruled.

{¶22} In regard to the trial court's decision not to provide an additional six-month extension of temporary custody, "[w]here the trial court finds that it is in the best interest of a child to be placed in legal custody as a permanent disposition, the trial court must necessarily deny an extension of temporary custody." *In re C.M.*, 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 24. Accordingly, as we concluded that the trial court did not err in finding it to be in the child's best interest to be placed in Aunt's legal custody, it did not err in failing to grant an extension of temporary custody. Accordingly, Mother's second assignment of error is also overruled.

**FATHER'S ASSIGNMENT OF ERROR I**

THE JUVENILE COURT AWARD OF LEGAL CUSTODY TO A THIRD
PARTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶23}** In the Fathers' first assignment of error, he challenges the trial court's decision declining to extend temporary custody of B.C. with CSB.

**{¶24}** Juv.R. 40(D)(3)(b)(iv) provides that, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."   Father failed to file objections to the magistrate's decision pertaining to legal custody.   Therefore, Father has forfeited all but plain error.   "While a [litigant] who forfeits such an argument still may argue plain error on appeal, this [C]ourt will not sua sponte undertake a plain [ ] error analysis if a [litigant] fails to do so."   *Hendy v. Wright*, 9th Dist. Summit No. 26422, 2013-Ohio-5786, ¶ 14, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41, citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11. As Father has not argued plain error, we decline to engage in a plain error analysis.

**{¶25}** Accordingly, Father's first assignment of error is overruled.

**FATHER'S ASSIGNMENT OF ERROR II**

THE JUVENILE COURT COMMITTED REVERSIBLE AND PLAIN ERROR
WITH ITS LACK OF REASONABLE EFFORTS FINDINGS PROMOTING
REUNIFICATION WITH THE FAMILY.

**{¶26}** In Father's second assignment of error, he argues that the trial court committed reversible and plain error in failing to issue written findings of fact supporting its determination that reasonable efforts were made to reunify B.C. with her family.

**{¶27}** R.C. 2151.419(A)(1) provides that, at a proceeding where a court continues the removal of a child from the child's home, it must determine whether CSB has made reasonable efforts to eliminate the continued removal of the child from her home or made it possible for the child to return safely home. R.C. 2151.419(B)(1) provides "A court that is required to make a determination as described in division (A)(1) or (2) of this section shall issue written findings of fact setting forth the reasons supporting its determination."

**{¶28}** However, here, CSB moved the trial court to permit it to bypass the reasonable efforts requirement as to Father. The magistrate denied the motion, and CSB objected. The trial court sustained the objection and determined that CSB was not required to make reunification efforts for Father because he had parental rights involuntarily terminated as to a sibling of B.C. *See* R.C. 2151.419(A)(2)(e). Therefore, inasmuch as it relates to Father, the trial court was not required to make written findings as to reunification efforts. To the extent that Father is attempting to argue that the trial court erred in failing to make reasonable efforts findings in regard to Mother, we cannot discern how Father's rights were affected by the such a failure. *See In re J.J.*, 9th Dist. Summit No. 21226, 2002-Ohio-7330, ¶ 36 (parent has standing to challenge only how the trial court's decision affected the parent's rights).

**{¶29}** Accordingly, Father's second assignment of error is overruled.

**MOTHER'S ASSIGNMENT OF ERROR IV**

THE TRIAL COURT COMMITTED PLAIN ERROR IN ADOPTING THE MAGISTRATE'S DECISION THAT CALCULATED THE CHILD SUPPORT DEVIATION.

**FATHER'S ASSIGNMENT OF ERROR III**

THE JUVENILE COURT COMMITTED REVERSIBLE AND PLAIN ERROR WITH ITS CHILD SUPPORT ORDERS BASED ON THE TESTIMONY AND AGREEMENTS BEFORE IT.

**{¶30}** In Mother's fourth assignment of error, and in Father's third assignment of error, the parents argue that the trial court erred in its order of child support.

**{¶31}** In part, the parties argue that the trial court failed to include in the record a child support worksheet for Mother and failed to make the determinations and findings required by R.C. 3119.22 in its order. When ordering child support, R.C. 3113.215 requires the trial court to use a child support worksheet "identical in content and form to the R.C. 3113.215(E) or (F) model worksheet[.]" *Marker v. Grim*, 65 Ohio St.3d 139, 142 (1992). This worksheet "must actually be completed and made a part of the trial court's record." *Id.* Here, the trial court attached a worksheet to the order, which identifies Father and Aunt as the parties. However, although Mother's name is not on the worksheet, her earnings and relevant child support information are included on the worksheet under the column titled "Mother[.]" Her annual and monthly support obligations are calculated along with Father's on the worksheet. Therefore, to the extent that the parties argue that the trial court erred in failing to include a worksheet for Mother, their argument lacks merit.

**{¶32}** Next, a calculation of child support "pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." R.C. 3119.03.

**{¶33}** Pursuant to R.C. 3119.22:

The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child.

> If it deviates, *the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.*

(Emphasis added.) *See also Irish v. Irish*, 9th Dist. Lorain Nos. 09CA009577, 09CA009578, 2010-Ohio-403, ¶ 12, citing *Maiorana v. Maiorana*, 9th Dist. Medina No. 08CA0016-M, 2008-Ohio-6179, ¶ 7.

{¶34} This Court has held that "[i]t is well settled that the requirements of R.C. 3119.22 are mandatory and must be literally and technically followed." *Ohlemacher v. Ohlemacher*, 9th Dist. Lorain No. 03CA008252, 2003-Ohio-6582, ¶ 6, citing *Marker* at paragraphs one and two of the syllabus, *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 29, and *Pinchbeck v. Pinchbeck*, 9th Dist. Lorain No. 03CA008227, 2003-Ohio-6125, ¶ 5. "If a trial court fails to comply with the literal requirements of the statute, it results in reversible error." *Ohlemacher* at ¶ 6, citing *Farmer v. Farmer*, 9th Dist. Medina No. 03CA0001-M, 2003-Ohio-4385, ¶ 9.

{¶35} Further, the determinations and findings required by R.C. 3119.22 must be contained in the trial court's order:

> This Court will not review the rather perfunctory decision of the magistrate for purposes of determining whether it complies with [former] R.C. 3113.215(B)(2) and [former] R.C. 3113.215(B)(3) because it is clear that "[w]hat the [magistrate] does is not a judicial act." *Walker v. Walker*, 9th Dist. Summit No. 12978, 1987 WL 15591 (Aug. 5, 1987). What is more, the trial judge cannot elevate the magistrate's decision to the status of a judicial act by adopting it. *Id.* The order of the trial court, itself, must contain the statutory findings necessary to justify deviations from the child support guideline.

*Berthelot v. Berthelot*, 9th Dist. Summit No. 22819, 2006-Ohio-1317, ¶ 22. *See also Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 10.

{¶36} Upon review of the record it is apparent that the trial court's May 15, 2013 order does not contain (1) a determination that the basic guideline amounts would be unjust or inappropriate, or (2) findings of fact supporting the deviation.

{¶37} We conclude that the trial court's failure to include mandatory determinations and findings in its order constituted reversible error. *See Ohlemacher* at ¶ 6. Accordingly, Mother's fourth, and Father's third, assignments of error are sustained to this extent. Therefore, we reverse and remand this matter for the trial court to make these determinations and enter the findings. Because the findings are necessary for appellate review of a child support deviation, we do not reach the merits of parents' arguments that the trial court committed plain error in its calculation of the deviation, as it is not yet ripe for review.

### MOTHER'S ASSIGNMENT OF ERROR III

[MOTHER] WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF TRIAL
COUNSEL.

### FATHER'S ASSIGNMENT OF ERROR IV

[FATHER] WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF TRIAL
COUNSEL.

{¶38} In Mother's third assignment of error, she argues that her trial counsel was not effective because he failed to file a supplemental brief to her objections to the legal custody determination, failed to appeal from the order overruling her objections to the legal custody order, and failed to object to the magistrate's decision regarding child support. In Father's fourth assignment of error, he maintains that his trial counsel was not effective because he failed to file objections to the legal custody decision, failed to appeal from the legal custody order, and failed to file objections to magistrate's decision regarding child support.

{¶39} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984);

*State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a party must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial [.]" *Strickland* at 687. The party challenging counsel's effectiveness must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. With this standard in mind, we will examine separately the respects in which the parents claim that their trial attorneys were ineffective.

Objections to Legal Custody Order

{¶40} Father argues that his attorney was ineffective for failing to file objections to the magistrate's decision regarding legal custody. Mother argues that her trial counsel was ineffective for failing to file a supplemental brief in support of her objections to the magistrate's decision regarding legal custody. In Mother's objections, she argued that legal custody should not have been granted to Aunt, and that the trial court should have granted an extension of temporary custody. Also, in her objections, Mother stated that she reserved the right to supplement her objections after the filing of the transcript of the testimony from the legal custody order. However, no supplemental brief was filed.

{¶41} It is not clear what additional argument Mother believes trial counsel should have raised in his supplemental brief. Therefore, she has not demonstrated ineffective assistance of counsel on this basis.

**{¶42}** In regard to Father, he appears to indicate that his trial counsel should have objected on the basis that custody to Aunt was not in the child's best interest at that time because he could have successfully completed his case plan with an additional six-month extension.[1] However, as we discussed in regard to Mother's first assignment of error, the trial court did not err in finding that it was in the child's best interest to be placed in Aunt's legal custody. Therefore, "the trial court must necessarily deny an extension of temporary custody." *In re C.M.*, 2009-Ohio-943, at ¶ 24. Accordingly, we cannot discern how the parents were prejudiced by Mother's attorneys' failure to file a supplemental brief or Father's attorney's failure to file objections.

Failure to Appeal from the Legal Custody Order

**{¶43}** Next, Mother and Father argue that, if we were to determine that the legal custody order was a final, appealable order, they were deprived of effective assistance based on their attorneys' failure to timely file appeals from the legal custody order (or, in regard to Mother, the order overruling her objections to the magistrate's decision). Although we did conclude that the legal custody order was a final, appealable order, we further determined that the parents could also appeal the legal custody order within thirty days of the May 15, 2013 order pursuant to App.R. 4(B)(5). Accordingly, the parents have not demonstrated prejudice.

Failure to Object to the Magistrate's Decision Regarding Child Support

**{¶44}** Next, in regard to Mother's and Father's arguments that their trial attorneys were ineffective for failing to object to the magistrate's decision regarding child support, we conclude

---

[1] Father also appears to argue that Mother's counsel was ineffective for failing to file a supplemental brief. However, Father has cited no authority permitting him to challenge the effectiveness of another party's attorney, and thus we will limit our discussion to the arguments raised by the parties as to their respective attorneys.

that our disposition of Mother's fourth, and Father's third, assignments of error renders our review of effectiveness of trial counsel premature, as this matter must be remanded for the trial court to make the required determinations and findings as previously discussed. Accordingly, we decline to review this portion of the parties' assignments of error.

{¶45} Therefore, Mother's third and Father's fourth assignments of error are overruled.

### III.

{¶46} Mother's and Father's first and second assignments of error are overruled. Mother's fourth, and Father's third, assignments of error are sustained to the extent that they argue that the trial court failed to include statutory findings in its order deviating from the child support guideline amounts, but to the extent that the parents argue that the trial court erred in its calculation of the deviation, we decline to review these assignments of error, as they are not yet ripe for review. Mother's third, and Father's fourth, assignments of error are overruled on the merits to the extent that they argue their trial attorneys were ineffective for failing to file a supplemental brief and an appeal from the legal custody order. To the extent that they argue that their trial attorneys were ineffective for failing to file objections to the May 15, 2013 order, we conclude that our review is premature based upon our disposition of Mother's fourth, and Father's third, assignments of error. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

DEREK CEK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

SALLY PRENTICE, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.